Louisiana State Rice Milling Co., Inc., demandante y apelante, *v.* Sucesores de Armstrong Hermanos, demandados y apelados.

No. 3223.—*Visto:* Diciembre 5, 1924. *Resuelto:* Marzo 26, 1925.

1. Ventas—Cumplimiento de Contrato—Entrega y Recibo de Mercaderías.— Un contrato de compraventa de arroz "*Low Grade* with not more than 30 per cent mixture of screening" no se cumple por el vendedor mediante entrega de "*Medium Grade*", habiéndose demostrado que son grados diferentes.

Sentencia de *R. Díaz Cintrón,* J. (Ponce), desestimando la demanda en todas sus partes, sin especial condenación de costas. *Confirmada.*

*O. B. Frazer, Nelson Gammans* y *R. Castro Fernández*, abogados del
apelante; *Arturo Ortiz Toro, R. Dapena* y *M. Tous Soto*, abo-
gados del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

La demandante, una corporación organizada bajo las le-
yes del estado de Louisiana, celebró un contrato de venta
de arroces con la demandada, una sociedad mercantil colec-
tiva domiciliada en Ponce, P. R.  Surgieron dificultades con
motivo del mismo.  Se sometieron a la Cámara Insular de
Comercio.  Rindió ésta su fallo que no satisfizo a las partes
Intervino el Board of Trade de New Orleans, La.  Y la in-
terpretación de la decisión rendida por dicho *board,* es la
cuestión esencial envuelta en este pleito.  Cada parte sos-
tiene que dicha decisión le es favorable.

[1] El contrato de venta copiado a la letra dice:

"Contrato de Venta para Puerto Rico.
No. 00007 PR.
"Aprobado por la
"Asociación de Molineros de Arroz
"Efectivo Agosto 1, 1917.

"louisiana state rice milling co. inc.

"Por el presente contrato vende y conviene en hacer entrega, y
Sucs. de Armstrong Hermanos el comprador abajo firmado, compra
y se compromete a pagar el importe de la siguiente mercancía:

| Espacio para memorándum del vendedor | Cantidad de sacos de 100 lbs. | No. de las muestras | Precio CIF incluso los sacos | Grados, variedad, marcas, etc. |
|---|---|---|---|---|
| | 1,000 | Rosy Low Grade Rice with not more than 30% mixture of screening. | At best price possible on date ordered out from mill. | Not later than Nov. 30, 1920. |
| | 300 | Choice Blue Rose. | | |

"Este convenio se hace conforme los términos y condiciones que

preceden y las impresas al dorso los cuales ya conocen las partes interesadas.

"Este convenio escrito es el contrato completo de las partes interesadas y no impone compromiso alguno sobre el vendedor hasta ser aceptado y confirmado por el vendedor por escrito o por cable.

> "Louisiana State Rice Milling Co., Inc.
> "Stebbins & Co., Inc., *Agents,*
> "Por J. González Torres, *Vendedor.*
> "Sucs. de Armstrong Hermanos,
> "Por
>
> "*Comprador.*

"Confirmada por cable
"Fecha: Octubre 7 de 1920."

La demandante envió a la demandada diferentes partidas de arroz y la demandada se negó a recibirlas alegando que no eran de la clase especificada en el contrato.

Ambas partes convinieron entonces en que el arroz se vendiera en pública subasta y en someter la controversia surgida al arbitraje de la Cámara Insular de Comercio, San Juan Branch, con apelación para ante el New Orleans Board of Trade, comprometiéndose a aceptar el fallo del *board* como final y la demandada a pagar la diferencia de precio, si existiere, entre el de factura y el obtenido en la subasta.

Al ejercerse el derecho de apelación pactado, se sometió el caso al Board por medio de un documento que copiado textualmente dice:

> "Playa de Ponce, P. R., *July 29, 1921.*

"The New Orleans Board of Trade,

> "New Orleans, La.

"Gentlemen:

"Referring to the case in arbitration, Louisiana State Rice Milling Co. vs. Sucers. Armstrong Hermanos, I beg to state that the matters to decide are:

"1. Is the rice, in regard to quality specified in the contract, the same as the type shipped by the Louisiana State Rice Millg. Co.?

"2. Was the price at which the shipment was invoiced, the market price the day the shipment was made?

"In the assurance of your kind attention to this matter, we are, Yours very truly,

> "SUCS. DE ARMSTRONG HERMANOS.
> "STEBBINS & CO., INC.,
> "J. GONZÁLEZ TORRES, *Secretary*."

Y el fallo final del Board, copiado en lo pertinente, fué como sigue:

" . . . . . the Clean Rice Arbitration Committee in session this day have carefully examined the following described samples, predicating their conclusions upon the information contained in the letter of the Louisiana State Rice Milling Company of date August the 9th, 1921, and unanimously rendered decision as follows:

"Sample marked 'AJ'_____ 402 pockets.
Classifies 'Medium Blue Rose—Coated'—Contains 25% of broken rice, and valued October first 1920 at five and one-half cents (5½ c.) per pound F. O. B. mill in single pockets.
"Sample marked 'AT'_____ 321 pockets.
Classifies 'Choice Blue Rose—Uncoated'—Contains 12% of broken rice, and valued October first 1920 at seven and one-half ecnts (7½ c.) per pound F. O. B. mill in single pockets.
"Sample marked 'AK'_____ 450 pockets.
Classifies 'Medium Blue Rose—Uncoated'—Contains 24% of broken rice, and valued October second 1920, at five and one-half cents (5½ c.) per pound F. O. B. mill in single pockets.
"Sample marked 'AL'_____ 170 pockets.
Classifies 'Medium Early Prolific (Blue Rose Variety)—Coated,' contains 30% of broken rice, and valued October second 1920 at five and one-half cents (5½ c.) per pound F. O. B. mill in single pockets."

Y surgió el pleito porque en verdad el fallo final del Board que pudo ser tan sencillo y preciso, fué rendido en forma tal que se prestó a que ambas partes sostuvieran como en efecto sostuvieron que les era favorable. Después de oídas las pruebas, la corte de distrito dictó sentencia en pro de la demandada y la demandante interpuso el presente recurso señalando en su alegato tres errores, así:

"1. La Corte de Distrito cometió error en no juzgar que el fallo de la New Orleans Board of Trade era a favor de la demandante.

"2. La Corte de Distrito cometió error en admitir prueba en cuanto al tipo de arroz comprado y al tipo de arroz entregado.

"3. La Corte de Distrito cometió error en no declarar con lugar la demanda."

A nuestro juicio no se ha cometido el segundo de los errores señalados y el tercero está envuelto en el primero. Todo el debate gira alrededor del primero. ¿Demuestra el fallo final del Board que el arroz enviado por la demandante a la demandada es el mismo especificado en el contrato de venta? Veámoslo.

La autenticidad de la prueba documental a que hemos hecho referencia se admite por ambas partes.

En el acto de la vista, con la oposición de la parte demandada, la demandante introdujo las deposiciones de H. S. Herring, secretario-tesorero de la Junta de Comercio de New Orleans, La., y Joe Bloom, negociante en arroz. La deposición del primero de dichos testigos es puramente sobre cuestiones de procedimiento. La del segundo va a los méritos de la cuestión. Dice el testigo que en agosto y septiembre de 1921 era miembro del Comité de Arbitraje de arroz limpio, que se ha dedicado al negocio de arroz durante treinta años y que su Comité rindió una decisión en el caso de autos. A la pregunta: "¿Está abarcada la descripción de la muestra marcada 'AJ' a saber: 'Medium Blue Rose coated contains 25% of broken rice,' como usada en la resolución de dicha New Orleans Board of Trade, Ltd. dentro de la descripción 'rosy low-grade rice with not more than 30% mixture of screenings?," contestó: "Sí, señor." Y una contestación igual dió a preguntas similares con respecto a los otros lotes a que se refiere el fallo arbitral.

Luego introdujo la parte demandante al testigo L. G. Laland. Declaró que la diferencia allá por septiembre y octubre de 1920 entre un precio de arroz F. O. B., molino de Louisiana, y Ponce, era un peso las cien libras. Y al introducir al almonedero Isidoro Delgado, la demandada admitió que el arroz se había vendido en subasta pública obteniéndose el precio especificado en la demanda. Con ello terminó su caso la demandante.

La prueba de la demandada consistió en las declaraciones de Arturo Bravo, Pedro L. Armstrong, Rafael Collazo, Oscar Martínez, Francisco Amundarai, varios documentos y un folleto.

La declaración de Bravo, secretario de la Cámara de Comercio, se refiere como la deposición de Herring, al procedimiento seguido sobre el cual no hay disputa. Armstrong, miembro de la sociedad demandada, declaró con la oposición de la demandante, que la demandante ''envió tres lotes, uno resultó Medium Blue Rose con brillo, otro resultó Medium Blue Rose sin brillo y otro *early prolific,* no recuerdo si con brillo o sin brillo,'' y que a virtud de esa clasificación que hizo al llegar los arroces, se negó a recibirlos. Luego refiriéndose al fallo dice que ''el arroz Medium Blue Rose es un grado dentro de los distintos tipos de arroz'' y el ''Blue Rose una clase de arroz;'' que por ''Medium Early Prolific'' se entiende ''un tipo de arroz de clase mediana,'' y concluye que hay una diferencia en calidad entre el ''Medium Blue Rose y el Rose Low Grade'' que consiste ''en que el Medium Blue Rose es un arroz bueno que sigue en categoría al *choice,* y el Low Grade es el más inferior que hay como arroz.'' El precio de ambos arroces, asegura el testigo es diferente. Sigue el testigo declarando ampliamente sobre las reglas de clasificación de los arroces en New Orleans. Sometido entonces a un largo contrainterrogatorio por la parte demandante, difícil de resumir, sostiene que ''puede haber arroz rosado en la clase mediana y arroz rosado en la clase inferior.'' Más o menos en igual sentido se expresaron los testigos Collazo, comerciante de Ponce, Martínez, también comerciante de Ponce, y Amundarai, comisionista en arroz.

De las reglas para la inspección de arroz del New Orleans Board of Trade, Ltd., a que se refirieron los testigos y que fueron introducidas como prueba se transcribe lo siguiente:

"*Classifications, grades and specifications of Rice for inspection by the Clean Rice Arbitration and Inspection. Committee of the New Orleans Board of Trade, Limited.*

"CLASSIFICATIONS:—Honduras. Carolina. Blue Rose. Louisiana Pearl. Early Prolific. Japan.

"GRADES:—I. Extreme Fancy. II. Fancy. III. C h o i c e. IV. Medium. V. Low.

"SPECIFICATIONS:—    *    *    *

"IV.—*Medium.*

"*Separation.*—Fairly well screened with all very fine screenings removed.

"*Color.*—Any color except deep red, badly stackburned or badly mud-stained.

"*Style.*—Ordinarily milled and finished; liberal amount of either stack burn or of stained, specked or red grains; liberal, but not excessive, amount of chalk.

"*Cleanliness.*—Liberal amount of paddy, foreign matter, seeds or straw, but not excessive unless sufficiently offset by superior style, color, or grain.

"V.—*Low.*

"Any rice grading below the specifications above, in separation, style, color, and cleanliness of *Medium, screenings* and *second heads* are excepted from any of the five grades enumerated above."

La demandante como contraprueba introdujo los testigos Stebbins y Laland. El primero dijo que tiene veinte y cinco años de experiencia y que un arroz rosado con menos de 30 por ciento de granos partidos (*screenings*) sería calificado de "arroz ordinario," "tipo corriente". Clasificaría como tipo bajo un arroz Blue Rose rosado *medium* con 24 por ciento de granos partidos. Dijo que habría como cincuenta clases de arroz bajo. A repreguntas de la parte demandada contestó que era socio de Stebbins & Co. casa que representaba a la Louisiana State Rice Milling Co. cuando se vendió el arroz de que se trata en este caso. Y el segundo declaró:

"P. Dígame si usted sabe qué por ciento como máximum de granos partidos puede tener un arroz medium?—R. No puede tener más de treinta por ciento.—P. Si tiene más de 30 por ciento ¿qué clase

de arroz es?—R. *Low grade.*—P. Si es un arroz Blue Rose rosado con menos del 30 por ciento de granos partidos, ¿qué clase de arroz sería según el New Orleans Board of Trade?—R. Depende de cuán-tos granos, es decir, que un arroz rosado, siendo no muy rosado, si tiene no más de veinte por ciento de partido, es *choice;* si es rosado y tiene hasta 30 por ciento, es *medium.*—P. ¿Y *low?*—R. Si es rosado y tiene más de 30 por ciento es *low grade.*—P. Pero si es rosado y no tiene más de 30 por ciento, ¿puede ser *low grade?*—R. No, señor. P. ¿Qué color puede tener un arroz *low grade* según el New Orleans Board of Trade?—R. No puede tener otro color que bien colorado, muy colorado o muy manchado.—P. ¿Cuáles son los tipos altos de arroz?—R. Los tipos altos se entienden entre *fancy, extra fancy* y *choice.*—P. ¿Y los tipos bajos?—R. Mediano y *low grade.*—P. ¿Sabe usted qué quiere decir en Puerto Rico, en el comercio de la Isla por la palabra 'corriente,' cuando se usa en cuanto a arroz?—R. Yo entiendo que es un arroz malo, un arroz barato, inferior.—P. ¿Qué un arroz corriente es un arroz malo?—R. Sí.—P. Si usted tiene un arroz rosado *medium* con 24 o 25 por ciento de granos partidos, ¿usted cree que es un tipo alto o un tipo bajo de arroz?—R. Es un tipo bajo.—P. ¿Por qué es un tipo bajo?—R. Un tipo bajo porque nadie puede decir que es un tipo bueno un arroz rosado con 25 por ciento de grano partido.''

Reconoció el testigo un folleto del Departamento de Agricultura de los Estados Unidos, que fué introducido como prueba.

La parte apelante en su alegato, entre otras cosas, dice:

''La demandada basa todo su caso en el hecho de que el arroz entregado era clasificado como 'Medium' y alega que según el contrato tuvimos que entregar arroz del grado más bajo, de la clasificación técnica 'Low' como lo llama el panfleto de New Orleans o 'Sample Grade' como lo llama el Departamento de Agricultura. Quiere dar a las palabras 'Low-grade rice' una definición técnica y estricta. Nosotros alegamos que esas palabras se usaban en el contrato para describir el arroz como un 'low-grade rice' (un arroz de calidad inferior) y sin la intención de exigir la entrega de arroz de un grado peor que 'medium.' Según el fallo el arroz entregado era del grado técnico 'Medium' y rosado y tenía entre 24 y 30 por ciento de granos partidos (*screenings*). El testigo Bloom y los otros testigos de la demandante declararon que un arroz de este tipo es un arroz de un

grado inferior, un 'low-grade rice' y por tanto el grado de arroz comprado.

"La Corte debe interpretar las palabras 'low-grade rice' en ese sentido por dos razones. En primer lugar cuando un contrato contiene dos disposiciones incompatibles, una general y la otra particular, la disposición particular prevalecerá, y en segundo lugar un contrato no debe interpretarse de tal modo que es imposible de cumplir cuando hay otra interpretación posible de cumplirse."

Aunque es necesario reconocer que la introducción en el contrato de la condición "with not more than 30 per cent mixture of screenings" produce alguna confusión, no se puede negar que la otra condición "Low Grade" es predominante y que el fallo del Board of Trade de New Orleans calificó el arroz entregado de *Medium,* habiéndose demostrado cumplidamente que *Medium* y *Low* son grados diferentes. Siendo ello así, no es posible concluir que la corte de distrito errara al apreciar la prueba en el sentido de no haber la parte demandante demostrado que entregó a la demandada la misma clase de arroz que le vendiera.

Y si no se entregó la clase especificada en el contrato estuvo el comprador justificado en su negativa a recibirla. "Si la venta se hiciere sobre muestras o determinando calidad conocida en el comercio," prescribe el artículo 327 del Código de Comercio, "el comprador no podrá rehusar el recibo de los géneros contratados, si fueren conformes a las muestras o a la calidad prefijada en el contrato." Y si está obligado a recibirlos en tal caso, por ministerio de la ley, claro es que no lo está cuando la condición no se cumple.

Por virtud de todo lo expuesto, *debe confirmarse la sentencia recurrida.*